REQUESTED BY: David L. Wegner, Acting Co-Probation Administrator
 Introduction
You have asked for our opinion as to whether or not the Office of Public Counsel (referred to herein as the "Ombudsman") is entitled under the law to have access to presentence investigation ("PSI") reports which have been given by State probation officers to the Nebraska Department of Correctional Services (DCS), as required by Neb. Rev. Stat. § 29-2261(7) (Cum. Supp. 2004). We infer from the language of your request that you are concerned that the PSI reports will lose some of their confidentiality if they are accessible to the Ombudsman.
As will be discussed in more detail below, after reviewing the pertinent statutes it is our conclusion that the Ombudsman does have the authority to inspect and examine the PSI reports that are in the possession of DCS. We are also of the opinion, however, that, because of the confidentiality of the PSI reports, the Ombudsman is prohibited from sharing any specific information he may glean from any specific PSI report with any other person who is not "entitled by law to receive such information." Neb. Rev. Stat. § 29-2261(6) (Cum.Supp. 2004).
The Authority of the Ombudsman to Inspect and Examine the PSI Reports
Neb. Rev. Stat. § 29-2261(1) (Cum. Supp. 2004) states that "[u]nless it is impractical to do so, when an offender has been convicted of a felony other than murder in the first degree, the court shall not impose sentence without first ordering a presentence investigation of the offender and according due consideration to a written report of such investigation." Subsection (3) of § 29-2261 goes on to describe what is to be contained in a presentence investigation and report. This includes, among other things, such items as:
 • an analysis of the circumstances attending the commission of the crime;
• the offender's criminal history;
• the offender's physical and mental condition;
• the offender's family situation and background;
 • the offender's economic status, education, occupation and personal habits;
• victim statements, given either in writing or orally; and
 • other matters deemed pertinent by the probation officer preparing the report or ordered by the court.
Because much of this information is highly personal both to the offender and to any victims or other informants who may be referred to in the report or whose statements are included in the report and because there are good public policy reasons for limiting access to the information in a PSI report, the Legislature, in subsection (6) of that same statute, has declared that such reports (and any psychiatric examinations) "shall be privileged and shall not be disclosed directly or indirectly to anyone other than a judge, probation officers to whom an offender's file is duly transferred, the probation administrator or his or her designee, or others entitled by law to receive such information. . . ." (Emphasis supplied.)
Thus, given the privileged or confidential nature of PSI reports and the limitations placed upon access to such reports by the Legislature, the question is whether the Ombudsman is among the "others entitled by law to receive such information." A reading of the pertinent statutes, we believe, makes clear that he is.
Initially, it is important to note that § 29-2261(7) specifically states that "[i]f an offender is sentenced to imprisonment, a copy of the report of any presentence investigation or psychiatric examination shall be transmitted immediately to the Department of Correctional Services." While subsection (7) does not alter the privileged or confidential nature of PSI reports, it does make clear that DCS is one of the "others" who are "entitled by law to receive" the PSI reports and, indeed, to have possession of them. The statutes governing the contents of inmate files by DCS go on to specify that, once a PSI report is received by DCS, it is to become a part of, and be maintained in, the individual inmate file mandated by law for each individual committed to the custody of DCS. Neb. Rev. Stat. § 83-178(1)(b) (Cum. Supp. 2004).
The statutes proceed to make clear that, once in individual files maintained by DCS, the PSI reports and psychiatric examinations are accessible to the Ombudsman, i.e., that the Ombudsman is "entitled by law to receive" the information in the PSI reports or psychiatric examinations. First, Neb. Rev. Stat. § 81-8,245(4) (2003), which is part of the general statutes governing the procedures and authority of the Ombudsman, provides that the Ombudsman "shall have power to . . . inspect and examine the records and documents of all administrative agencies notwithstanding any other provision of law. . . ." (Emphasis supplied.) Second, § 83-178, which includes the provision making the PSI reports part of the individual files of incarcerated individuals which are required by law to be maintained by DCS, specifically states in subsection (6) that "[n]othing in this section shall be construed to limit in any manner the authority of the Public Counsel to inspect and examine the records and documents of the department pursuant to [the sections governing the Ombudsman's authority and power]." Putting these statutory provisions (§§ 81-8,245(4) and 83-178(6)) together it becomes apparent that the Legislature ensured that the Ombudsman would be deemed to be "entitled by law" to inspect and examine the PSI reports and psychiatric examinations held in the individual inmate files maintained by DCS. Therefore, the Ombudsman is entitled to have access to the PSI reports of incarcerated inmates, as found in their individual inmate files.
 Confidentiality Concerns
As noted above, the pertinent statute (§ 29-2261(6)) makes clear that PSI reports and psychiatric examinations of convicted individuals are privileged and are to be disseminated to a very limited number of officials and entities. There are good public policy reasons for such limitation. We have indicated informally on previous occasions that the PSI reports can include police reports containing information that the victim or confidential sources would prefer not be disseminated. Officials preparing the reports may feel that access should be restricted so that it is more likely that the convicted offender and others being interviewed will be open and honest with the interviewer. Also, allowing greater access to the PSI reports may make it more difficult to withhold the reports from individuals who would misuse the contents. Additionally, there could be serious safety concerns for victims, witnesses, confidential informants and even the offender if information they give to the police or probation authorities falls into the wrong hands.
We do not mean to suggest that the Ombudsman's office would in any way misuse or illegally disseminate the contents of the PSI reports it may review. Nonetheless, in light of your obvious concern about the confidentiality of PSI reports, we think it important to stress that, even though the Ombudsman may inspect and examine the PSI reports in the possession of DCS, the reports and the information therein remain confidential and subject to the limitations on dissemination contained in § 29-2261(6).
Section 29-2261(6) states that the PSI reports "shall not be disclosed directly or indirectly" to anyone other than those listed in that statute and those who are otherwise "entitled by law to receive such information. . . ." (Emphasis supplied.) This means that no person entitled to see PSI reports, including the Ombudsman, may convey, either directly or indirectly, any specific information found in the reports to any person not "entitled by law to receive such information." We recognize that the Ombudsman, after conducting an investigation of an issue brought to him for handling, may announce a conclusion and recommendation, make recommendations to the affected administrative agency and publish conclusions and recommendations to the Governor, the Legislature, the press and others who may be concerned. Neb. Rev. Stat. §§ 81-8,248, 81-8,249, 81-8,250 (2003). We find nothing in the general language of this broad authority, however, that could be deemed to override the specific language of § 29-2261(6) making PSI reports "privileged" and strictly limiting access to information from such reports. Thus, specific information from specific PSI reports should never appear in any conclusions or recommendations made or published by the Ombudsman.
Further, it is worth noting that the sentenced offender is not among those who are "entitled by law" to receive information from the PSI report concerning him or her. In the next-to-last sentence of § 29-2261(6) it is made clear that an offender or his or her attorney may inspect the PSI report or psychiatric examination, or parts thereof, only if permitted to do so by the court. Accordingly, the specific information in a PSI report, in whole or in part, should not be divulged, either directly or indirectly, to the offender or his or her attorney unless there is an appropriate court order allowing the offender or his or her attorney to make an inspection of the report or parts thereof.
Finally, we note that, while the Ombudsman is entitled to inspect and examine the PSI reports in the possession of DCS, there is no statutory requirement that DCS provide copies of the reports or portions thereof to the Ombudsman. Before it was amended by LB 628 in 2000 to require that agencies provide copies, the public records law allowed those seeking public documents "to examine the same, and to make memoranda and abstracts therefrom. . . ." Neb. Rev. Stat. § 84-712 (1994). Under that provision the Attorney General consistently took the position that the public records statutes did not require public officials to provide copies of public records. Op. Atty. Gen. No. 96074 (1996). The statutory language of § 81-8,245(4) that the Ombudsman is entitled to "inspect and examine" the documents and records of agencies is similar to that found in the public records law before it was amended. Therefore, it is our view that DCS is under no obligation to provide copies of PSI reports to the Ombudsman.
 Conclusion
For the reasons set forth above, it is our opinion that the Ombudsman is "entitled by law to receive" the information contained in PSI reports, within the meaning of § 29-2261(6). He may receive such information through his authority to "inspect and examine the records and documents of all administrative agencies notwithstanding any other provision of law." § 81-8,245(4). This is so because the statutes provide that the PSI reports are to become parts of the individual inmate files of DCS, §§ 29-2261(7) and 83-178(1)(b); and, therefore, the PSI reports become subject to the Ombudsman's authority to "inspect and examine the records and documents" of DCS.
While concluding that the Ombudsman is "entitled by law" to inspect and examine the PSI reports in the possession of DCS, we have pointed out that, even though the Ombudsman may have such access, the specific information in PSI reports remains confidential and may not be divulged, either directly or indirectly, to anyone not specifically listed in §29-2261(6) or otherwise "entitled by law to receive such information."
 Sincerely, JON BRUNING Attorney General
 Charles E. Lowe Assistant Attorney General
 Approved by: _____________________________ Attorney General